

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
08/27/2020

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| BRUIN E&P PARTNERS, LLC, *et al.*,[1] | ) Case No. 20-33605 (MI) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. 141** |

**ORDER (I) AUTHORIZING THE RETENTION AND EMPLOYMENT OF PJT PARTNERS LP AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE AS OF THE PETITION DATE, (II) WAIVING CERTAIN TIME KEEPING REQUIREMENTS, AND (III) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, Bankruptcy Rules 2014 and 2016, and Bankruptcy Local Rules 2014-1 and 2016-1, (a) authorizing the Debtors to retain and employ PJT Partners LP ("PJT") as investment banker, effective as of July 17, 2020 (the "Petition Date"), pursuant to the terms of the PJT Engagement Letter, (b) waiving certain time-keeping requirements, and (c) granting related relief, all as more fully set forth in the Application; and upon the First Day Declaration and the Laurinaitis Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://omniagentsolutions.com/bruin. The location of Debtor Bruin E&P Partners, LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 602 Sawyer Street, Suite 710, Houston, Texas 77007.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors are hereby authorized to retain PJT as investment banker to the Debtors in these chapter 11 cases, effective as of the Petition Date, on the terms and conditions set forth in the Application and the Engagement Letter attached hereto as **Exhibit 1**, as modified by this Order.

2.      Except to the extent set forth herein, the Engagement Letter (together with all attachments thereto), including without limitation the Fee Structure, are approved pursuant to Bankruptcy Code sections 327(a) and 328(a), and the Debtors are authorized and directed to perform its payment, reimbursement, contribution, and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and at the times specified, in the Engagement Letter.  Subject to Paragraph 6 of this Order, all compensation and reimbursement of expenses payable under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to any other

2

standard of review including, but not limited to, that set forth in section 330 of the Bankruptcy Code.

3.      The Debtors are authorized to pay PJT's fees and to reimburse PJT for its reasonable costs and expenses as provided in the Engagement Letter, and in particular, all of PJT's fees and expenses in these chapter 11 cases, including the Monthly Fee, the Capital Raising Fee, and the Restructuring Fee, are hereby approved pursuant to section 328(a) of the Bankruptcy Code. For the avoidance of doubt, to the extent not previously paid prior to the Petition Date, PJT shall be paid (a) each Capital Raising Fee for any financing, as to which PJT may be entitled under the Engagement Letter as soon as such financing is approved by this Court (or, if such approval occurred prior to entry of this Order, immediately following entry of this Order) and with respect to amounts available to the Debtors, and (b) the Restructuring Fee upon consummation of a Restructuring, in each case subject to subsequent Court approval of any such Capital Raising Fee or Restructuring Fee pursuant to PJT's fee application.

4.      PJT shall apply to this Court for allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable orders of this Court; *provided* that the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rule 2016-1 are hereby modified such that PJT's restructuring professionals shall only be required to maintain summary records in half-hour increments describing each professional's tasks on a daily basis in support of each fee application, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records to this Court; *provided, further,* that PJT's professionals shall not be required to keep time records on a project category basis or provide or conform to any schedules of hourly rates.

5.     PJT's Monthly Fee shall be prorated for any month in which PJT is not employed for each day of the month, and PJT shall refund the prorated amount of any Monthly Fee paid in advance.

6.     PJT will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, PJT will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by FED. R. BANKR. P. 2014(a).

7.     PJT shall be compensated in accordance with the terms of the Engagement Letter and in particular, all of PJT's fees and expenses in these chapter 11 cases are hereby approved pursuant to section 328(a) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the fees and expenses payable to PJT pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in Bankruptcy Code section 328(a) and shall not be subject to the standard of review set forth in Bankruptcy Code section 330, except by the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee").  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of PJT's compensation and expense reimbursements under Bankruptcy Code sections 330 and 331; *provided, that* reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in this case to the fees paid to other investment banking firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of this case.  Accordingly, nothing

4

in this Order or the record shall constitute a finding of fact or conclusion of law binding on the

U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of PJT's compensation.

8.     The indemnification, contribution, and reimbursement provisions set forth in the

Indemnification Agreement are approved, subject, during the pendency of the Debtors' chapter 11

case, to the following:

    a.    subject to the provisions of subparagraphs (b) and (c), *infra*, the Debtors are authorized to indemnify, and to provide contribution and reimbursement to, and shall indemnify, and provide contribution and reimbursement to, any Indemnified Party (as defined in the Indemnification Agreement) in accordance with the Indemnification Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter;

    b.    notwithstanding subparagraph (a) above or any provisions of the Indemnification Agreement to the contrary, the Debtors shall have no obligation to indemnify PJT or provide contribution or reimbursement to PJT (i) for any claim or expense that is judicially determined (the determination having become final and no longer subject to appeal) to have arisen from PJT's self-dealing, breach of fiduciary duty (if any), gross negligence, willful misconduct, or bad faith; (ii) for a contractual dispute in which the Debtors allege the breach of PJT's contractual obligations if this Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Company*, 315 F.3d 217 (3d Cir. 2003); or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof to be a claim or expense for which PJT should not receive indemnity, contribution, or reimbursement under the terms of the Indemnification Agreement, as modified by this Order; and

    c.    if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases,  PJT believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Indemnification Agreement (as modified by this Order), including without limitation, the advancement of defense costs, PJT must file an application therefor in this Court, and the Debtors may

not pay any such amounts to PJT before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which this Court shall have jurisdiction over any request by PJT for indemnification, contribution and/or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, PJT.

9.      PJT is authorized to apply any prepetition advance or retainer to satisfy any unbilled or other remaining prepetition fees and expenses PJT becomes aware of during its ordinary course billing review and reconciliation.  Any remaining retainer held by PJT shall be held by PJT as security throughout these chapter 11 cases until PJT's fees and expenses are fully paid.

10.      Notwithstanding anything to the contrary in the Application and/or Engagement Letter, PJT shall have whatever duties, fiduciary or otherwise, that are imposed upon it by applicable law.

11.      To the extent there is any inconsistency between the terms of the Engagement Letter, the Application, and this Order, the terms of this Order shall govern.

12.      Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

13.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

15.      Notwithstanding any term in the Engagement Letter to the contrary, this Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Signed:  August 27, 2020

Marvin Isgur
United States Bankruptcy Judge

**Exhibit 1**

**Engagement Letter**



PJT Partners

April 23, 2020

Matthew R. Pacey, P.C.
Debbie P. Yee, P.C.
Kirkland & Ellis LLP
609 Main St. #4500
Houston, TX 77002

Dear Mr. Pacey and Ms. Yee:

This letter confirms the understanding and agreement (the "**Agreement**") between PJT Partners LP ("**PJT Partners**") and Kirkland & Ellis LLP ("**Counsel**"), as counsel to Bruin E&P Partners, LLC ("**Bruin**" and together with any affiliates and subsidiaries, the "**Company**"), regarding the retention of PJT Partners on an exclusive basis by Counsel effective as of April 1, 2020 (the "**Effective Date**") as its investment banker for the purposes set forth herein. Reference is hereby made to that certain letter agreement, dated February 27, 2020, by and between PJT Partners and Kirkland & Ellis LLP, as counsel to the Company (the "**Prior Letter**").  The Prior Letter is hereby terminated effective as of the Effective Date.

For the avoidance of doubt, affiliates of the Company as described herein shall not include other portfolio companies of ArcLight Energy Partners Fund VI, L.P. and/or any other funds managed by ArcLight Capital Partners, LLC (collectively "**ArcLight**") and this Agreement does not create obligations on behalf of such companies or funds.

Under this Agreement, PJT Partners will provide investment banking services to Counsel in connection with a possible restructuring of certain liabilities of the Company, and will assist Counsel in analyzing, structuring, negotiating and effecting the Restructuring (as defined below) pursuant to the terms and conditions of this Agreement.  As used in this Agreement, the term (A) "**Restructuring**" shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of the United States Bankruptcy Code ("**Chapter 11**")) and/or recapitalization of the Company affecting any of its existing or potential debt obligations or other claims against the Company, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "**Obligations**"), and/or (ii) a sale or other acquisition or disposition of a material portion of the assets and/or equity of the Company, and/or (iii) any complete or partial repurchase, refinancing, extension or repayment by the Company of any of the Obligations and (B) "**Amendment**" shall mean any material amendment, modification, waiver or forbearance in respect of the Company's Amended and Restated Credit Agreement dated as of September 7, 2017 (as amended prior to the date hereof) as to which PJT provided services to the Company (including, without limitation, assistance in the structuring and/or negotiation thereof), which such Amendment is, or series of separate Amendments with respect to the same Obligations are in the aggregate, effective for at least thirty (30) days in duration.

The investment banking services to be rendered by PJT Partners will, if appropriate and at the request of the Company, include the following:

(a)     assist in the evaluation of the Company's businesses and prospects;

(b)     assist in the development of the Company's long-term business plan and related financial projections;

(c)     assist in the development of financial data and presentations to the Company's Board of Directors, various creditors and other third parties;

(d)     analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

**Bruin E&P Partners, LLC**
April 23, 2020

(e)    analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of those stakeholders impacted by the Restructuring;

(f)    provide strategic advice with regard to restructuring or refinancing the Company's Obligations;

(g)    evaluate the Company's debt capacity and alternative capital structures;

(h)    participate in negotiations among the Company and its creditors, suppliers, lessors and other interested parties;

(i)    value securities offered by the Company in connection with a Restructuring;

(j)    advise the Company and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

(k)    assist in arranging financing for the Company, as requested;

(l)    provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services;

(m)    assist the Company in preparing marketing materials in conjunction with a possible sale transaction;

(n)    assist the Company in identifying potential buyers or parties in interest to a potential sale transaction and assist in the due diligence process;

(o)    assist and advise the Company concerning the terms, conditions and impact of any proposed sale transaction; and

(p)    provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a transaction similar to a potential Restructuring, as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, PJT Partners shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity.  PJT Partners makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring.  PJT Partners is retained under this Agreement solely to provide advice regarding a Restructuring and is not being retained to provide "crisis management" or any legal, tax, accounting or actuarial advice.  It is understood and agreed that nothing contained herein shall constitute a commitment, express or implied, on the part of PJT Partners to underwrite, purchase or place any securities, in a financing or otherwise.

It is agreed that the Company will pay the following fees to PJT Partners for its investment banking services (all fees and expenses payable to PJT Partners pursuant to this Agreement shall be payable solely by the Company; Counsel shall have no obligation to pay PJT Partners' fees or expenses):

(i)    a monthly advisory fee (the "**Monthly Fee**") in the amount of $150,000 per month, payable by the Company in cash as follows: (a) to the extent the Effective Date occurs after the 1st day of the month, for the period beginning on the Effective Date through the end of the first calendar month (the "**Stub Period**"), a pro-rated monthly fee in advance upon execution of this Agreement; (b) for the first full calendar month following the Stub Period, if applicable, or the Effective Date if there is no Stub Period, in advance upon execution of this Agreement; and (c) for each month thereafter, in advance on the first day of each month. Fifty percent (50%) of all Monthly Fees paid to PJT Partners after the ninth Monthly Fee has been paid under this Agreement and the Prior Letter (i.e., after $1,200,000 in Monthly Fees has been paid under this Agreement and the Prior Letter, in aggregate) shall be credited against any Restructuring Fee (as defined below) payable hereunder;

(ii)    a capital raising fee (the "**Capital Raising Fee**") for any financing arranged by PJT Partners, at the Company's request, earned and payable upon the closing of such financing.  If access to the

financing is limited by orders of the bankruptcy court, a proportionate fee shall be payable with respect to each available commitment (irrespective of availability blocks, borrowing base, or other similar restrictions).  The Capital Raising Fee will be calculated as 1.0% of the total issuance size for new money senior debt financing, 3.0% of the total issuance size for new money junior debt financing, and 5.0% of the issuance amount for new money equity financing;

(iii)     an additional fee (the "**Restructuring Fee**") equal to $9,000,000.  Except as otherwise provided herein, a Restructuring shall be deemed to have been consummated upon (a) in the case of an out-of-court Restructuring, the closing of the Restructuring, including, to the extent applicable the binding execution and effectiveness of all necessary waivers, consents, amendments or restructuring agreements between the Company and its creditors involving (1) the compromise of the face amount of any of the Obligations, (2) the conversion of all or part of such Obligations into alternative securities, including equity, or (3) any other Restructuring; or b) in the case of an in-court Restructuring, the consummation of a Chapter 11 plan or any other Restructuring pursuant to an order of the Bankruptcy Court or other applicable court.  The Restructuring Fee will be earned and payable, in cash, on the earliest of:

> (w)     consummation of the Restructuring,

> (x)     in the event that the Company attempts to implement the Restructuring by means of a pre-negotiated Chapter 11 plan, (A) 50% upon the receipt of sufficient commitments, agreements or other expressions of intention to accept such plan that the Company elects to file a Chapter 11 case and seek to confirm such plan, and (B) 50% upon consummation of the Restructuring, and

> (y)     in the event that the Company solicits acceptances for a prepackaged Chapter 11 plan to implement the Restructuring, (A) 50% on the date established as the voting deadline for such acceptances or rejections, provided that at least one class of creditors impaired by such plan has voted to accept such plan, and (B) 50% upon consummation of the Restructuring; and

(iv)     an amendment fee (the "**Amendment Fee**") equal to $500,000 for any Amendment, earned and payable upon the closing of such Amendment; provided, however, that PJT shall be entitled to only one Amendment Fee notwithstanding multiple or subsequent amendments in connection with a Restructuring or otherwise;

(v)     to the extent requested by PJT Partners and approved by the Company in its sole discretion, a discretionary fee in an amount to be determined by the Company in its sole discretion based upon the performance of PJT Partners during the engagement hereunder, earned and payable, in cash, on the same date as the Restructuring Fee is payable; and

(vi)     reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of PJT Partners' counsel (without the requirement that the retention of such counsel be approved by the court in any bankruptcy case) and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses, provided that the Company shall have the right to approve of such counsel (which approval shall not be unreasonably withheld).  In connection therewith the Company shall pay PJT Partners on the Effective Date and maintain thereafter a $25,000 expense advance for which PJT Partners shall account upon termination of this Agreement. PJT Partners shall not seek reimbursement of any individual item of expense in excess of $5,000 without the

**Bruin E&P Partners, LLC**
April 23, 2020

prior written consent (email being acceptable) of the Company, which consent shall not be unreasonably withheld, delayed or conditioned.

PJT Partners will direct all communications and notices regarding financial matters, including billing, to the contacts designated by the Company on Schedule I (the "**Company Financial Matters Contacts**").  Please note that any invoices in excess of $500,000 will be provided to the Company Financial Matters Contacts in an encrypted form or other secure manner and subject to an authentication process.  Payments to PJT Partners shall be made pursuant to the wire instructions set forth on Schedule II, and any changes to the PJT Partners' wire instructions will be provided by the PJT Partners financial matters contacts, as set forth on Schedule I (the "**PJT Partners Financial Matters Contacts**"), to the Company Financial Matters Contacts in an encrypted form or other secure manner and subject to an authentication process.  Any notices and communications regarding financial matters, including billing, from the Company shall be directed to one of the PJT Partners Financial Matters Contacts.

All amounts herein are stated in U.S. dollars and all payments under this Agreement shall be paid in immediately available funds in U.S. dollars, free and clear of any tax, assessment or other governmental charge (with appropriate gross-up for withholding taxes).  If any amount to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted in U.S. dollars at the prevailing exchange rate on the date such amount is paid.

In the event that the Company is or becomes a debtor under Chapter 11, the Company shall use its best efforts to promptly apply to the bankruptcy court having jurisdiction over the Chapter 11 case or cases (the "**Bankruptcy Court**") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) PJT Partners' retention by the Company under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code.  The Company shall supply PJT Partners with a draft of such application and any proposed order authorizing PJT Partners' retention sufficiently in advance of the filing of such application and proposed order to enable PJT Partners and its counsel to review and comment thereon.

PJT Partners shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under Chapter 11 unless PJT Partners' retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order entered by the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to PJT Partners in all respects.

The Company will use its commercially reasonable efforts to ensure that PJT Partners' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of the indemnification agreement attached hereto as Attachment A shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more cash collateral and/or financing orders entered by the Bankruptcy Court.  Following entry of an order authorizing PJT Partners' retention, the Company will assist PJT Partners in preparing, filing and serving fee statements, interim fee applications, and a final fee application. The Company will support PJT Partners' fee applications that are consistent with this Agreement in papers filed with the Bankruptcy Court and during any Bankruptcy Court hearing. The Company will pay promptly the fees and expenses of PJT Partners, in each case, which are both (i) owed pursuant to this Agreement and (ii) approved by the Bankruptcy Court in accordance with the orders of the Bankruptcy Court.

PJT Partners acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, PJT Partners' fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that, to the extent time records are required, PJT Partners will keep them in one-half hour increments and, provided further, that PJT Partners shall not be required to maintain receipts for expenses in amounts less than $75.  In the event that the Company becomes a debtor under Chapter 11 and PJT Partners' engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of PJT Partners hereunder as promptly as

**Bruin E&P Partners, LLC**
April 23, 2020

practicable in accordance with the terms hereof.  Prior to commencing a Chapter 11 case, the Company shall pay all invoiced amounts to PJT Partners in immediately available funds by wire transfer.

With respect to PJT Partners' retention under sections 327 and 328 of the Bankruptcy Code, the Company acknowledges and agrees that PJT Partners' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Company during the term of PJT Partners' engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Company of PJT Partners' services hereunder could not be measured merely by reference to the number of hours to be expended by PJT Partners' professionals in the performance of such services.  The Company also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of PJT Partners and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for PJT Partners and that the actual time and commitment required of PJT Partners and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.  In addition, given the numerous issues which PJT Partners may be required to address in the performance of its services hereunder, PJT Partners' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for PJT Partners' services for engagements of this nature in an out-of-court context, the Company agrees that the fee arrangements hereunder (including the Monthly Fee, Capital Raising Fee, Restructuring Fee and Amendment Fee) are reasonable under the standards set forth in 11 U.S.C. Section 328(a).

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or transactions that may be undertaken by PJT Partners at the request of Counsel or the Company, including the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement.  The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between PJT Partners and the appropriate party.

PJT Partners acknowledges that it has agreed to maintain the confidentiality of material non-public information provided to it by or at the request of the Company under and pursuant to the terms of that certain confidentiality agreement dated as of December 13, 2019 (the "**Confidentiality Agreement**").  For the avoidance of doubt, PJT Partners may provide nonpublic Information (as defined below) to prospective transaction parties as contemplated by this Agreement, subject to such parties executing appropriate confidentiality agreements with the Company.

The Company will furnish or cause to be furnished to PJT Partners such information as PJT Partners believes appropriate to its assignment (all such information so furnished being the "**Information**").  The Company further agrees that it will provide PJT Partners with reasonable access to the Company and its directors, officers, employees, accountants, counsel and other advisers. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  During the term of the engagement, the Company shall inform PJT Partners promptly upon becoming aware of any material developments relating to the Company which the Company reasonably expects may impact on the proposed Restructuring or if the Company becomes aware that any Information provided to PJT Partners is, or has become, untrue, unfair, inaccurate or misleading in any way.  Furthermore, the Company warrants and undertakes to PJT Partners that, in respect of all Information supplied by the Company, the Company has not obtained any such Information other than by lawful means and that disclosure to PJT Partners will not breach any agreement or duty of confidentiality owed to third parties.  The Company recognizes and confirms that PJT Partners (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.  For the avoidance of doubt, the foregoing paragraph shall not apply to financial projections of the Company provided to PJT Partners.

**Bruin E&P Partners, LLC**
April 23, 2020

In the event that the Information belonging to the Company is stored electronically on PJT Partners' computer systems, PJT Partners shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons not acting on its behalf, provided that PJT Partners exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's information that it exercises with regard to its own most sensitive proprietary information.

PJT Partners acknowledges and agrees that the work product produced by PJT Partners pursuant to this Agreement is for the purpose of facilitating the rendering by Counsel of legal advice to the Company and constitutes attorney work product, and that any communication to Counsel, including, without limitation, any correspondence, analyses, reports and related materials that PJT Partners prepares, constitutes confidential and privileged communications and PJT Partners will not disclose the same or any of the Information to any other person except as requested by Counsel.

Except as required by applicable law, any advice to be provided by PJT Partners under this Agreement shall not be disclosed publicly or made available to third parties (other than the Company's other professional advisors, board of directors, managers, equityholders, and/or employees or, if appropriate in the Company's judgment, in any filings in a Chapter 11 proceeding) without the prior written consent of PJT Partners.  In the event disclosure is required by subpoena or court order, the Company will provide PJT Partners with reasonable advance notice and permit PJT Partners to comment on the form and content of the disclosure.  All services, advice, information and reports provided by PJT Partners to Counsel in connection with this assignment shall be for the sole benefit of Counsel and shall not be relied upon by any other person.

The Company acknowledges and agrees that PJT Partners will provide its investment banking services exclusively to Counsel on behalf of the members of the Board of Directors and senior management of the Company and not to the Company's shareholders or other constituencies. The Board of Directors and senior management will make all decisions for the Company regarding whether and how the Company will pursue a Restructuring, capital raise and/or Amendment and on what terms and by what process.  In so doing, the Board of Directors and senior management will also obtain the advice of the Company's legal, tax and other business advisors and consider such other factors which they consider appropriate before exercising their independent business judgment in respect of a Restructuring, capital raise and/or Amendment.  The Company and Counsel further acknowledge and agree that PJT Partners has been retained to act solely as investment banker to Counsel on behalf of the Company and does not in such capacity act as a fiduciary for the Company or any other person.  PJT Partners shall act as an independent contractor and any duties of PJT Partners arising out of its engagement pursuant to this Agreement shall be owed solely to the Company. Following the public announcement of a Restructuring, capital raise and/or Amendment, PJT Partners may, at its own expense, place tombstones on its marketing materials, including its website, describing PJT Partners' services hereunder and the Company agrees that PJT Partners may use the Company's logo in any such tombstones; provided that, PJT Partners shall only disclose such information as has already been made public.  In any press release or other public announcement made by the Company regarding a Restructuring, capital raise and/or Amendment that references the services hereunder, the Company shall refer to PJT Partners LP or such entity as PJT Partners may direct.

In consideration of PJT Partners' agreement to provide investment banking services to Counsel in connection with this Agreement, it is agreed that the Company will indemnify PJT Partners and its agents, representatives, members and employees pursuant to the indemnification agreement attached to this Agreement as <u>Attachment A</u>. The indemnification agreement is an integral part of this Agreement and the terms thereof are incorporated by reference herein.  PJT Partners acknowledges Counsel has no obligation to indemnify PJT Partners.

PJT Partners' engagement hereunder commenced on the Effective Date and will continue until 30 days after either Counsel or PJT Partners shall have notified the other party in writing of the termination of this Agreement; termination for cause by either party will occur immediately following such written notice. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of PJT Partners as an independent contractor, the limitation as to whom PJT Partners shall owe any duties, and any other provision of this Agreement that, by its terms, survives termination, will survive any such termination, and (b) any such termination shall not affect the Company's obligations under the

Bruin E&P Partners, LLC
April 23, 2020

indemnification agreement attached as <u>Attachment A</u> or PJT Partners' confidentiality obligations under the Confidentiality Agreement. Without limiting the foregoing, PJT Partners shall be entitled to the Restructuring Fee, Capital Raising Fee  and/or Amendment Fee (a "**Tail Fee**") as applicable, in the event that, at any time prior to the expiration of 12 months following the written termination of this Agreement (the "**Tail Period**") either (i) a Restructuring, a capital raise, and/or an Amendment, as applicable, is consummated or (ii) a definitive agreement with respect to a Restructuring, a capital raise, and/or an Amendment, respectively, is executed and a Restructuring, a capital raise, and/or an Amendment respectively, is thereafter consummated; provided, however, that no such Tail Fee shall be payable if this Agreement was terminated in writing by Counsel for Cause or by PJT Partners without good reason. For the avoidance of doubt, if this Agreement is terminated in writing by the Company for Cause, PJT Partners shall not be entitled to any Tail Fee unless and until there is a final judicial determination that no Cause existed to warrant such termination. As used in the prior two sentences, "**Cause**" shall mean a final judicial determination of the gross negligence, bad faith or willful misconduct of PJT Partners in performing the services that are the subject of this Agreement or a material breach of this Agreement by PJT Partners that is not cured within a reasonable period of time following PJT Partners' receipt of notice of such breach.

The Company represents that neither it nor any of its affiliates under common control, nor, to the knowledge of the Company, any of their respective directors or officers, is an individual or entity ("**Person**") that is, or is owned or controlled by a Person that is: (i) a Person with whom dealings are prohibited or restricted under U.S. economic sanctions (including those administered or enforced by the U.S. Department of Treasury's Office of Foreign Assets Control and the U.S. Department of State) or under sanctions imposed by the United Nations Security Council, Canada, the European Union, or member countries of the European Union; (ii) a Person that is the subject to anti-money laundering prohibitions, restrictions, or sanctions specifically imposed on such Person by the United States, Canada, the European Union, member countries of the European Union, or any other relevant jurisdiction; or (iii) to the knowledge of the Company, not in compliance in all material respects with all applicable anti-money laundering laws and Sanctions laws.

The Company should be aware that PJT Partners and/or its affiliates may be providing or may in the future provide financial or other services to other parties with conflicting interests.  Consistent with PJT Partners' policy to hold in confidence the affairs of its clients, PJT Partners will not use confidential information obtained from the Company except in connection with PJT Partners' services to, and PJT Partners' relationship with, the Company, nor will PJT Partners use on the Company's behalf or have any obligation to disclose or otherwise have any liability with respect to any confidential information obtained from any other client.  Notwithstanding anything to the contrary provided elsewhere herein, the Company expressly acknowledges and agrees that none of the provisions of this Agreement shall in any way restrict PJT Partners from being engaged or mandated by any third party, or otherwise participating or assisting with any transaction involving any other party, other than a transaction that is the subject of this Agreement prior to the termination of this Agreement.

Bruin hereby represents and warrants that (a) it is duly authorized to execute and deliver this Agreement for and on behalf of each of its subsidiaries listed on Schedule III hereto and (b) the execution and delivery of this Agreement and the performance of the obligations of Bruin and each of its subsidiaries listed on Schedule III hereto under this Agreement has been duly authorized and this Agreement constitutes a valid and legal agreement binding on each such party and enforceable in accordance with its terms.

This Agreement (including the indemnification agreement attached hereto as <u>Attachment A</u>) and the Confidentiality Agreement embody the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this Agreement in any other respect, which will remain in full force and effect.  No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby. This Agreement and any dispute or claim that may arise out of this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

**Bruin E&P Partners, LLC**
April 23, 2020

Each of the Company and Counsel hereby agrees that any action or proceeding brought by the Company and/or Counsel against PJT Partners based hereon or arising out of PJT Partners' engagement hereunder, shall be brought and maintained by the Company and/or Counsel exclusively in the United States District Court for the Southern District of New York or the United States District Court for the Southern District of Texas; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case.  Each of the Company and Counsel irrevocably submits to the jurisdiction of such courts and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of PJT Partners' engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings.  Each of the Company and Counsel hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

**Notices**.  Any notices required or permitted to be given hereunder by either party hereto to the other will be given in writing (i) by personal delivery, email or facsimile transmission, (ii) by nationally-recognized overnight delivery company or (iii) by prepaid first class, registered or certified mail, postage prepaid, in each case addressed to the other party hereto as set forth on Schedule I (or to such other address as the other party hereto may request in writing by notice given pursuant to this section). Notices will be deemed received on the earliest of: (a) if personally delivered, emailed or sent via facsimile, the same day; (b) if sent by overnight delivery company, on the second working day after the day it was sent; or (c) if sent by mail, when actually received.

This Agreement may be executed, including by electronic signature, in one or more counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.  A facsimile of a signed copy of this Agreement or other copy made by reliable mechanical means or an electronic signature may be relied upon as an original.

[SIGNATURE PAGE FOLLOWS]

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to PJT Partners the duplicate copy of this Agreement and the indemnification agreement attached hereto as <u>Attachment A</u>.

Very truly yours,

PJT PARTNERS LP

By: PJT Management, LLC, its general partner

By: _____
      Name: Peter Laurinaitis
      Title: Partner

Accepted and Agreed to as
of the date first written above:

Bruin E&P Partners, LLC
(on behalf of itself and its subsidiaries listed on Schedule III hereto)

By: _____
      Name: Tyler Crabtree
      Title: Chief Financial Officer

Kirkland & Ellis LLP

By: _____
      Name: STEVEN N. SERAJEDDINI, P. C.
      Title: Partner

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to PJT Partners the duplicate copy of this Agreement and the indemnification agreement attached hereto as <u>Attachment A</u>.

Very truly yours,

PJT PARTNERS LP

By: PJT Management, LLC, its general partner

By: _____
    Name: Peter Laurinaitis
    Title: Partner

Accepted and Agreed to as
of the date first written above:

Bruin E&P Partners, LLC
(on behalf of itself and its subsidiaries listed on Schedule III hereto)

By: _____
    Name: Tyler Crabtree
    Title: Chief Financial Officer

Kirkland & Ellis LLP

By: _____
    Name: STEVEN N. SERAJEDDINI, P.C.
    Title: Partner

Bruin E&P Partners, LLC
April 23, 2020

ATTACHMENT A

April 20, 2020

PJT Partners LP
280 Park Avenue
New York, NY  10017

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

This letter will confirm that PJT Partners LP ("**PJT Partners**") has been engaged by Kirkland & Ellis LLP ("**Counsel**") as counsel to Bruin E&P Partners, LLP (together with its affiliates and subsidiaries, the "**Company**") in connection with the matters referred to in the letter of agreement, dated as of April 20, 2020, by and between PJT Partners and Counsel (the "**Engagement Letter**").  In connection with the engagement of PJT Partners to advise and assist Counsel on behalf of the Company as described in the attached Engagement Letter (the "**Engagement**"), in the event that PJT Partners becomes involved in any capacity in any claim, suit, action, proceeding, investigation or inquiry (including, without limitation, any shareholder or derivative action or arbitration proceeding) (collectively, a "**Proceeding**") in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, including, without limitation, related services and activities prior to the date of the Engagement Letter, the Company agrees to indemnify, defend and hold PJT Partners and its affiliates, and their respective current and former directors, officers, agents, employees, attorneys and other representatives and the successors and assigns of all of the foregoing persons (each an "**Indemnified Party**") harmless to the fullest extent permitted by law, from and against any losses, claims, damages, fines, penalties, liabilities and expenses ("**Losses**"), whether they be joint or several, in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, including, without limitation, related services and activities prior to the date of the Engagement Letter, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that such Losses resulted primarily from the gross negligence, bad faith or willful misconduct of such Indemnified Party.  In the event that any Indemnified Party becomes involved in any capacity in any Proceeding (regardless of whether or not such or any Indemnified Party is a party to or the subject of such Proceeding) in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter (including, without limitation, in enforcing the Engagement Letter), the Company will reimburse such Indemnified Party for its legal and other expenses (including the cost of any investigation and preparation) as such expenses are incurred by such Indemnified Party in connection therewith.  The Company also agrees to cooperate with any Indemnified Party and to give, and so far as it is able to procure the giving of, all such information and render all such assistance to such Indemnified Party as such Indemnified Party may reasonably request in connection with any Proceeding and not to take any action which might reasonably be expected to prejudice the position of any Indemnified Party in relation to any Proceeding without the consent of PJT Partners (such consent not to be unreasonably withheld).  In the event that any Indemnified Party is requested or authorized by the Company or required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or in connection with the matters referred to in the Engagement Letter, the Company will, so long as PJT Partners is not

**Bruin E&P Partners, LLC**
April 23, 2020

a party to the Proceeding in which the information is sought, pay PJT Partners the fees and expenses of its counsel incurred in responding to such a request.

If such indemnification is for any reason not available or insufficient to hold an Indemnified Party harmless, the Company agrees to contribute to the Losses involved in the proportion appropriate to reflect the relative benefits received or sought to be received by the Company and its security holders and affiliates and other constituencies, on the one hand, and the Indemnified Party, on the other hand, in connection with the matters contemplated by the Engagement Letter, or, if such allocation is determined by a court or arbitral tribunal to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of the Company or its security holders and affiliates or other constituencies, on the one hand, and of the Indemnified Parties, on the other hand; provided, however, that, to the extent permitted by applicable law, the Indemnified Parties shall not be responsible for amounts which in the aggregate are in excess of the amount of all fees actually received by PJT Partners from the Company in connection with the Engagement.  The Company agrees that for the purposes of this paragraph the relative benefits received, or sought to be received, by the Company and its security holders and affiliates and other constituencies, on the one hand, and the Indemnified Party, on the other hand, in connection with the matters contemplated by the Engagement Letter shall be deemed to be in the same proportion that the total value received or paid or contemplated to be received or paid by the Company or its security holders or affiliates and other constituencies, as the case may be, as a result of or in connection with the matters (whether or not consummated) for which PJT Partners has been retained to perform financial services bears to the fees paid to PJT Partners under the Engagement Letter; provided, however, to the extent permitted by applicable law, the Indemnified Parties, taken together, shall not be liable for Losses which in the aggregate are in excess of the amount of fees actually received by PJT Partners pursuant to the Engagement Letter (exclusive of amounts paid for reimbursement of expenses under the Engagement Letter).

The Company agrees that no Indemnified Party shall have any liability to the Company or any person asserting claims on behalf of or in right of the Company in connection with any matter in any way relating to or referred to in the Engagement Letter or arising out of the matters contemplated by the Engagement Letter, including, without limitation, related services and activities prior to the date of the Engagement Letter, except to the extent that it shall be determined by a court of competent jurisdiction in a judgment that has become final in that it is no longer subject to appeal or other review that any Losses incurred by the Company resulted primarily from the gross negligence, bad faith or willful misconduct of PJT Partners.

If any Proceeding shall be brought, threatened or asserted against an Indemnified Party in respect of which indemnity or contribution may be sought against the Company, PJT Partners shall promptly notify the Company in writing; provided that failure to so notify the Company shall not relieve the Company from any liability which the Company may have on account of this indemnity or otherwise, except to the extent the Company shall have been actually materially prejudiced by such failure.  The Company, upon the written request of such Indemnified Party, shall or, upon written notice to such Indemnified Party, may elect to, assume the defense of such Proceeding, at the Company's own expense, with counsel reasonably satisfactory to such Indemnified Party.  Such Indemnified Party shall have the right to employ separate counsel in any such Proceeding and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (a) the Company has agreed in writing to pay such fees and expenses, (b) the Company has failed to assume the defense, pursue the defense reasonably diligently or to employ counsel in a timely manner, (c) outside counsel to such Indemnified Party has advised such Indemnified Party that in such Proceeding there is an actual or potential conflict of interest or a conflict on any material issue between the Company's position and the position of such Indemnified Party or (d) the named parties to any such Proceeding (including any impleaded parties) include such Indemnified Party and the Company, and outside counsel to such Indemnified Party has advised such Indemnified Party that there may be one or more legal defenses available to such Indemnified Party which are different from or in addition to those available to the Company.

The Company agrees that, without PJT Partners' prior written consent (which shall not be unreasonably withheld, conditioned or delayed), it will not settle, compromise or consent to the entry of any judgment in any pending or threatened Proceeding in respect of which indemnification or contribution may be sought hereunder (whether or

**Bruin E&P Partners, LLC**
April 23, 2020

not an Indemnified Party is an actual or potential party to such Proceeding), or otherwise directly or indirectly facilitate or participate in any such settlement, compromise or consent by any director, officer or affiliate of the Company, unless such settlement, compromise or consent (a) includes an explicit and unconditional release from the settling, compromising or consenting party of each Indemnified Party from all liability arising out of such Proceeding and (b) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, due care, loyalty, expertise or reputation of any Indemnified Party or any action or inaction by each Indemnified Party.  No Indemnified Party seeking indemnification, reimbursement or contribution under this letter agreement will, without the Company's prior written consent (which shall not be unreasonably withheld, conditioned or delayed), settle, compromise, consent to the entry of any judgment or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification, reimbursement or contribution may be sought.

The Company's reimbursement, indemnification and contribution obligations under this letter agreement shall be in addition to any liability which the Company may otherwise have at law or in equity, shall not be limited by any rights PJT Partners or any other Indemnified Party may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, PJT Partners and any other Indemnified Party.

This agreement embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect or impair such provision or the remaining provisions of this agreement in any other respect, which will remain in full force and effect.  No waiver, amendment or other modification of this letter agreement shall be effective unless in writing and signed by each party to be bound thereby.

This agreement may be executed, including by electronic signature, in one or more counterparts, each of which will be deemed an original and all of which together will constitute one and the same instrument.  A facsimile of a signed copy of this agreement or other copy made by reliable mechanical means or an electronic signature may be relied upon as an original.

The Company hereby agrees that any action or proceeding brought by the Company against PJT Partners based hereon or arising out of PJT Partners' engagement hereunder, shall be brought and maintained by the Company exclusively in the United States District Court for the Southern District of New York or the United States District Court for the Southern District of Texas; provided, if the Company commences a Chapter 11 case, all legal proceedings pertaining to this engagement arising after such case is commenced may be brought in the Bankruptcy Court handling such case.  The Company irrevocably submits to the jurisdiction of such courts and appellate courts from any thereof for the purpose of any action or proceeding based hereon or arising out of PJT Partners' engagement hereunder and irrevocably agrees to be bound by any judgment rendered thereby in connection with such action or proceedings.  The Company hereby irrevocably waives, to the fullest extent permitted by law, any objection it may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

[SIGNATURE PAGE FOLLOWS]

**Bruin E&P Partners**
April 23, 2020

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of PJT Partners by us in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

Bruin E&P Partners, LLC hereby represents and warrants that (a) it is duly authorized to execute and deliver this agreement for and on behalf of each of its subsidiaries listed on Schedule III to the Engagement Letter and (b) the execution and delivery of this agreement and the performance of the obligations of Bruin E&P Partners, LLC and each of its subsidiaries listed on Schedule III to the Engagement Letter under this agreement has been duly authorized and this agreement constitutes a valid and legal agreement binding on each such party and enforceable in accordance with its terms.

This agreement and the Engagement Letter shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

Bruin E&P Partners, LLC
(on behalf of itself and its subsidiaries listed on Schedule III to the Engagement Letter)

By: _____
  Name:  Tyler Crabtree
  Title:  Chief Financial Officer

Accepted and Agreed to as

of the date first written above:

PJT PARTNERS LP

By: PJT Management, LLC, its general partner

By: _____
  Name:  Peter Laurinaitis
  Title:  Partner

**Bruin E&P Partners, LLC**
April 23, 2020

# Schedule I

### Notices

Financial Matters Contacts:  All communications and notices related to financial matters, including billing, shall be addressed to the following:

If to PJT Partners:

> PJT Partners LP
> 280 Park Avenue
> New York, NY 10017
>
> Attention to either:
> - Helen Meates, Chief Financial Officer; htm@pjtpartners.com; 212.364.7807
> - David Figur, Director of Finance; figur@pjtpartners.com; 212.364.5056; or

If to the Company:

> Bruin E&P Partners, LLC
> 602 Sawyer St, Suite 710
> Houston, TX 77007
> Attention:
> - Tyler Crabtree, Chief Financial Officer; tcrabtree@bruinep.com; 713.456.3005


All other notices shall be addressed to the following:

If to PJT Partners:

> PJT Partners LP
> 280 Park Avenue
> New York, NY 10017
> Attention:  General Counsel
> Email:  cuminale@pjtpartners.com
> Tel:  212.364.7170

If to the Company:

> Bruin E&P Partners, LLC
> 602 Sawyer St, Suite 710
> Houston, TX 77007
> Attention: General Counsel
> Email: wgetschow@bruinep
> Tel: 281.990.6953

**Bruin E&P Partners, LLC**
April 23, 2020

# Schedule II

**Wire Instructions**

**Bruin E&P Partners, LLC**
April 23, 2020

## Schedule III

### Subsidiaries

Bruin Williston Holdings, LLC
Bruin Williston I, LLC
Bruin Williston II, LLC,
Bruin E&P Operating, LLC
Bruin E&P Non-Op Holdings, LLC
Bruin Midstream, LLC.